UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAAHDI ABDUL COLEMAN,<br><br>            Plaintiff,<br><br>    v.<br><br>MOORE, et al.,<br><br>            Defendants. | Case No.: 1:23-cv-00324-KES-CDB<br><br>**SECOND SCREENING ORDER**<br><br>**ORDER DIRECTING CLERK OF THE COURT TO UPDATE THE DOCKET** |

Plaintiff Saahdi Abdul Coleman is proceeding pro se and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. section 1983. At present, this action proceeds on Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claims against Defendants Bean, Crawford, Doe 1, Doe 2, McDaniel, Moore, Russell, and Vasquez. (*See* Doc. 13.)

**I.    INTRODUCTION**

On October 17, 2025, the Court issued its Order Granting Plaintiff's Motion to File an Amended Complaint and Order Directing Plaintiff to File a First Amended Complaint Correcting the Name of a Previously Misidentified Defendant and Substituting Actual Names for Doe Defendants Within 30 Days. (*See* Doc. 24.)

Following an extension of time (*see* Doc. 25), Plaintiff timely filed a first amended complaint on December 22, 2025. (Doc. 27.)[1]

---

[1] The first amended complaint was served on December 16, 2025. (Doc. 27 at 11.)

## II. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## III. PLEADING REQUIREMENTS

### A. Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal quotation marks & citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Id.* (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of pro se prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal

quotation marks & citation omitted), and courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

### B. Linkage and Causation

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under section 1983, a "plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation," citing *Rizzo v. Goode*, 423 U.S. 362, 370-71, 375-77 (1976)).  The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legal required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

### C. Supervisory Liability

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *see e.g., Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (plaintiff required to adduce evidence the named supervisory defendants "themselves acted or failed to act unconstitutionally, not merely that a subordinate did"), *overruled on other grounds by Castro v. Cnty of Los Angeles,* 833 F.3d 1060, 1070 (9th Cir. 2016); *Jones v. Williams,* 297 F.3d 930, 934

1  (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section
2  1983 there must be a showing of personal participation in the alleged rights deprivation: there is
3  no respondeat superior liability under section 1983").

4  Supervisors may be held liable only if they "participated in or directed the violations, or
5  knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th
6  Cir. 1989). "The requisite causal connection may be established when an official sets in motion a
7  'series of acts by others which the actor knows or reasonably should know would cause others to
8  inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009).  Accord
9  *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based on
10 inaction in the training and supervision of subordinates).

11 Supervisory liability may also exist without any personal participation if the official
12 implemented "a policy so deficient that the policy itself is a repudiation of the constitutional
13 rights and is the moving force of the constitutional violation." *Redman v. Cnty. of San Diego*, 942
14 F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other*
15 *grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

16 To prove liability for an action or policy, the plaintiff "must ... demonstrate that his
17 deprivation resulted from an official policy or custom established by a ... policymaker possessed
18 with final authority to establish that policy." *Waggy v. Spokane Cnty. Washington*, 594 F.3d 707,
19 713 (9th Cir. 2010). When a defendant holds a supervisory position, the causal link between such
20 defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v.*
21 *Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the
22 involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v.*
23 *Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

24 **IV.   DISCUSSION**
25 **A. Plaintiff's First Amended Complaint**
26 Plaintiff names the following individuals employed at California State Prison, Corcoran
27 (CSP-COR) as defendants in this action: Respiratory Therapist Terrence McCoy, Chief Medical
28 Officer E. McDaniel, Doctors Russell and Moshe, Registered Nurses Crawford and Vasquez, and

4

1  Nurse Practitioner F. Fincalero. (Doc. 27 at 1.) Plaintiff seeks damages of $1,000,000 and

2  "Attorney fees[2] and any further relief the court deems appropriate." (*Id*. at 10.)

### B. The Factual Allegations

Plaintiff states he is a participant in the mental health program. (Doc. 27 at 4.) Plaintiff contends inmates in the program are regularly ridiculed and victimized, whether those inmates are "psychotic and delusional" or "just worn down by extended periods of incarceration." (*Id*.) Plaintiff contends he is a college graduate who has obtained "laudatory chronos" for his work tutoring other inmates. (*Id*.) He also states he has obtained certificates concerning his communication skills, however, when staff see his mental health program designation, they treat him as though his mental capacity is diminished and deny him his rights. (*Id*.)

Plaintiff contends that on July 22, 2021, he "passed out after struggling for breath," and was taken to an outside hospital for treatment. (Doc. 27 at 4.) A diagnosis was not immediately determined, and Plaintiff was scheduled for several tests to be conducted over the next several months. (*Id*.) On September 21, 2021, Plaintiff was seen by Defendant McCoy. (*Id*.) On October 7, 2021, Plaintiff was advised by Defendant Moshe that he had been diagnosed with moderate obstructive sleep apnea. (*Id*.) Plaintiff was told that "Apnea-Hypopnea Index (AHI) was a measurement system that determined the severity" of his condition. (*Id*.) His AHI measured between 15 and 30 breathing pauses per hour during sleep. (*Id*.)

Plaintiff alleges Defendant Moshe informed him that sleep apnea was a serious condition that left untreated could result in or lead to sudden death, heart failure, stroke, diabetes, high blood pressure, obesity, or extreme fatigue. (Doc. 27 at 4.) Defendant Moshe prescribed a continuous positive airway pressure (CPAP) machine; Defendant McCoy placed the order. (*Id*.) Defendant Moshe further advised Plaintiff he was enrolled in the Chronic Care Program. (*Id*.)

Plaintiff asserts the diagnosis was a shock because he was active, playing basketball and football, and now faced a "lifelong medical condition that could kill" him. (Doc. 27 at 4.) Plaintiff was affected every day, waking nightly unable to breathe. (*Id*.) He alleges he had to use his

---

[2] As Plaintiff was previously advised (*see* Doc. 7 at 4, n. 1), he is not entitled to attorney's fees. *Kay v. Ehrler*, 499 U.S. 432, 435 (1991).

1  fingers to open his airway. (*Id*.) His cognitive faculties were affecting his ability to perform basic
2  tasks. (*Id*.) Plaintiff states he was constantly fatigued, and his appearance changed. (*Id*.) He states
3  the worst part was the fear and pain he experienced, waking alone in solitary confinement "even
4  though [he] had done nothing wrong, scared and in pain." (*Id*.) He feared not waking and dying in
5  his sleep. (*Id*.)

6  Plaintiff contends the pain he suffered was unnecessary. (Doc. 27 at 4.) He asserts that
7  according to Defendants Moshe, Fincalero, McCoy, Russell, Crawford and Vasquez, the reason
8  Plaintiff had not yet received the "prescribed treatment was because there was a 'worldwide
9  shortage of CPAP machines.'" (*Id*. at 4-5.) Defendants' position did not change even after
10 Plaintiff "provided them with a list of companies that had CPAP machines in stock ready to ship."
11 (*Id*. at 5.) Next, Plaintiff alleges that, within days of the diagnosis, his mother, along with several
12 family members and his domestic partner, and "Power of Attorney Gina Lynn Gonzales," a
13 registered nurse for over 20 years, were able to identify ten companies that had available CPAP
14 machines ready for shipment. (*Id*.) Several of the companies had previously provided medical
15 equipment to the California Department of Corrections and Rehabilitation (CDCR). (*Id*.) Plaintiff
16 asked Ms. Gonzales to prepare a letter listing those companies and "that documented the fact that
17 she had [his] $1400.00 stimulus payment," and was authorized to use those funds for the purchase
18 of a CPAP machine. (*Id*.) The letter also stated that "we would defer to CDCR in how the CPAP
19 machine would be purchased," making clear Plaintiff was "open to whatever CDCR wanted" or
20 required concerning the purchase that would enable Plaintiff to receive the prescribed treatment.
21 (*Id*.)

22 On January 11, 2022, the letter was sent to "Defendants Chief Medical Officer,
23 Respiratory Therapist, Primary Care Physician, and all Corcoran medical personnel." (Doc. 27 at
24 5.) None responded. (*Id*.) Plaintiff contends that in CDCR, written communications received by
25 medical personnel or custody staff are stamped and logged as received. (*Id*.) Plaintiff asserts he
26 has possession of "the officially stamped documents" establishing "that the defendants knew that
27 there were CPAP machines available" at no cost to CDCR "and they chose to allow [him] to
28 suffer [unnecessarily]." (*Id*.)

6

1    Plaintiff asserts that when a response was not received, he personally contacted the
2 facility's litigation coordinator. (Doc. 27 at 5.) He provided the litigation coordinator with copies
3 of Ms. Gonzales's letter and "requested that the letters be delivered to Defendants Chief Medical
4 Officer, Respiratory Therapist, Primary Care Physician, and all concerned medical staff." (*Id*.)
5 Plaintiff states he possesses a response from the litigation coordinator stating delivery was made.
6 (*Id*.) Further, Plaintiff states he personally provided a copy of the letter to Defendants Russell and
7 Crawford, who "chose to do nothing to abate the risk" of harm he suffered. (*Id*.) Plaintiff
8 contends Russell and Crawford failed to provide him "medical attention for the visible bruising of
9 [his] neck." (*Id*.)

10    On March 30, 2022,[3] 2 Plaintiff states he "had IDTT with a team of mental health
11 members." (Doc. 27 at 6.) Plaintiff informed "them and [his] psychologist J. Fakhoury" that sleep
12 apnea was affecting his daily activities and quality of life, and that he was in pain. (*Id*.) He
13 advised them his family had located multiple CPAP machines and that they were willing to
14 purchase it and would allow CDCR medical staff to deal directly with the seller to determine
15 shipping. (*Id*.) Plaintiff maintains Psychiatric Technician Maximo Torres emailed Defendant
16 McCoy during the meeting, but McCoy did not respond. (*Id*.) Plaintiff followed up with Dr.
17 Fakhoury. (*Id*.) Plaintiff states he has a copy of the relevant health care services form,
18 documenting the email sent by Mr. Torres, and states Dr. Fakhoury "will be able to testify to
19 these facts." (*Id*.)[4]

20    When Plaintiff personally provided Ms. Gonzales's letter to Defendant Vasquez, Vasquez
21 informed Plaintiff that a CPAP machine would not be available until sometime in 2023 due to the
22 worldwide shortage. (Doc. 27 at 6.) Plaintiff states he was "really frustrated" with "continually
23 being ignored and told that no CPAP machines were available" despite the information he had
24 provided and his offer to pay for it. (*Id*.)

25    On January 12, 2022, Plaintiff filed a health care grievance requesting treatment for sleep

---

[3] Plaintiff wrote "March 30, 2020." Considering the other dates asserted in the factual allegations, the Court once again assesses Plaintiff's reference to be a typographical error and construes the correct date to be March 30, 2022.

[4] Neither Torres nor Fakhoury are named as defendants in this action.

7

1  apnea and a transfer to a medical facility. (Doc. 27 at 6.) On January 31, 2022, he filed an inmate
2  appeal requesting treatment. (*Id*. at 6-7.) On March 25, 2022, Plaintiff filed a health care
3  grievance requesting treatment for sleep apnea. (*Id*. at 7.) On March 27, 2022, he filed an inmate
4  appeal seeking to be transferred out of solitary confinement. (*Id*.)

5        In April 2022, a psychiatric technician "named Ms. Miller" expressed her concern that
6  Plaintiff had been sitting in his cell "in the dark all day." (Doc. 27 at 6.) After Plaintiff explained
7  he was tired and in pain, and "kinda felt like giving up," the woman informed him that CDCR
8  "was under a standing Court order to provide a certain level of medical and mental health care."
9  (*Id*.) She provided Plaintiff with the address of the attorneys handling the case and "told [him] to
10 write them." (*Id*.)

11       On April 12, 2022, Plaintiff wrote to the Law Firm of Rosen, Bien, Galvan and Grunfeld,
12 LLP. (Doc. 27 at 6.) He advised he had not received the "physician prescribed medical
13 treatment," was in pain, and "had been held in solitary confinement long-term for non-
14 disciplinary reasons." (*Id*.)

15       On April 15, 2022, Plaintiff learned another inmate diagnosed with mild sleep apnea had
16 been issued a CPAP machine. (Doc. 27 at 6.) The following day, Plaintiff sent a letter to
17 "Defendants Chief Medical Officer, Respiratory Therapist, Primary Care Physician, and all
18 concerned medical personnel requesting help." (*Id*.) The letter stated Plaintiff was in pain, had not
19 received a CPAP machine for six months despite his family locating available units and being
20 willing to purchase one, and was being ignored by medical staff. (*Id*.) Plaintiff requested that he
21 immediately be issued a CPAP machine. (*Id*.)

22       On May 5, 2022, Plaintiff received a reply from the Rosen law firm stating they had
23 forwarded his "letter pleading for help to the Prison Law Office." (Doc. 27 at 7.)

24       On June 6, 2022, Plaintiff received a letter from Dewi Zarni, litigation assistant to Alison
25 Hardy of the Prison Law Office. (Doc. 27 at 7.) The letter indicated "they had contacted the
26 California Correctional Health Care Services and receivers office of legal affairs." (*Id*.) Quoting
27 from it, Plaintiff states it requested "that 'In the light of Mr. Coleman's complaints of disturbed
28 sleep and suffering choking episodes, can his order for a new machine be prioritized?'" (*Id*.)

1    Three days later, on June 9, 2022, Plaintiff was issued a CPAP machine. (Doc. 27 at 7.)
2    Two weeks later, Plaintiff was transferred to a medical facility. (*Id*.) Plaintiff contends Defendant
3    Vasquez lied when she indicated CPAP machines would not be available until 2023. (*Id*.) He
4    states when attorneys became involved "and there was a hint that litigation was a possibility,
5    there was suddenly CPAP machines available. Not just for [Plaintiff] but for other inmates within
6    the facility, as well as room for us to be transferred to a medical facility where our chronic
7    condition could be [monitored]." (*Id*.)

    Plaintiff asserts Defendant McDaniel "stated, 'California law directs your health care
providers to offer and provide only the care they determine to be currently medically on clinically
necessary for you.'" (Doc. 27 at 8.) Plaintiff states: "My only question is; Wouldn't a physician
diagnosed chronic condition be medically or clinically necessary." (*Id*.)

    Next, Plaintiff asserts he met with Defendant McCoy "a few times." (Doc. 27 at 8.) They
spoke of his requests concerning a CPAP machine. (*Id*.) McCoy also suffers from sleep apnea and
expressed to Plaintiff some of his own pain and suffering experiences prior to obtaining treatment
himself. (*Id*.) Despite having personal knowledge of Plaintiff's condition, McCoy failed to
provide Plaintiff with the "treatment he ordered and knew" Plaintiff needed. (*Id*.) Plaintiff asserts
that within two weeks of receiving proper treatment, there was a noticeable improvement in his
quality of life. (*Id*.) Plaintiff asserts all the pain and suffering endured over an eight-month period
was preventable. (*Id*.)

    Plaintiff contends he did not have to suffer the way he did. (Doc. 27 at 8.) Despite the
letters, grievances, and complaints, Plaintiff was ignored and marginalized, noting "how
indifferent the defendants were to the suffering of someone under their care and control." (*Id*.)
Plaintiff contends his obstructive sleep apnea was diagnosed after a study revealed "an AHI of
24.2 events per hour," a "serious level disruption" that Defendant Moshe warned Plaintiff was
potentially life threatening without treatment. (*Id*.) Plaintiff contends the prescribed remedy is a
CPAP machine, which prevents repeated oxygen deprivation and averts "devastating
complications like cardiovascular disease, stroke, or sudden death." (*Id*.)

    Next, Plaintiff states that "for over eight agonizing months," he was denied a CPAP

machine "as the defendant played Russian Roulette with" his life. (Doc. 27 at 9.) He asserts that "[n]ight after night, [he] gasped desperately for air, jolted awake in sheer panic alone in a solitary confinement cell even though" he had done nothing wrong. (*Id*.) Plaintiff contends he "endured crushing headaches, and battled unrelenting exhaustion and terror, knowing that each untreated night pushed [him] closer to irreversible harm." (*Id*.) He maintains it "was not a mere inconvenience, it was prolonged, preventable torture that defendants knowingly allowed to fester. Each [named] defendant had personal knowledge of [his] condition and are individually liable for their actions, omissions, and indifference." (*Id*.)

Further, Plaintiff contends each Defendant had personal knowledge of the severity of his condition because Plaintiff personally pleaded with them, describing details and the impacts to his life. (Doc. 27 at 9.) Plaintiff alleges all dismissed his "cries with claims of a 'worldwide shortage'" of CPAP machines, revealed to be a lie. (*Id*.) Plaintiff maintains that instead of taking action to abate the risk of harm to him, Defendants "chose to do nothing," allowing him to suffer for months. (*Id*.) Plaintiff states he "could have died during [any one] of the 24.2 AHI events." (*Id*.) He asserts there "were so many options available," yet "[s]omething as simple as moving" Plaintiff into medical housing did not occur. (*Id*. at 10.)

In conclusion, Plaintiff asserts he "was in total agreement with the diagnosis and the course of treatment … didn't care how it was carried out" and "just wanted to be treated. (Doc. 27 at 10.) Plaintiff contends the named Defendants "had the power and the authority to treat" his condition and that Plaintiff has shown they acted with deliberate indifference: their "actions were reckless, [their] conduct was heartless, and their failure to take any action to abate the risk" to his health and safety makes "them liable as a matter of law." (*Id*.)

### C. Eighth Amendment Deliberate Indifference to Serious Medical Need

Plaintiff identifies his "Constitutional or other Federal Civil Right" violated as arising under the "5th, 8th, and 14th Amendments prohibition against deliberate indifference to a serious

1  medical need and risk to a person's health and safety."[5][6] (Doc. 27 at 3.)

2  Plaintiff states he was "in complete agreement with Defendants Dr. Moshe and Terrence McCoy's diagnosis" of a serious and chronic condition and the prescribed course of treatment. (*Id.*) Following diagnosis and a prescribed treatment course, however, Plaintiff contends Defendants failed to provide the prescribed treatment for over eight months. (*Id.*)

The undersigned construes Plaintiff's first amended complaint to assert deliberate indifference to serious medical needs claims against Defendants McCoy, McDaniel, Russell, Moshe, Crawford, Vasquez, and Fincalero.

## Applicable Legal Standards

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need is serious if failure to treat it will result in '"significant injury or the unnecessary and wanton infliction of pain."'" *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (9th Cir. 2014) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096 (quotation marks omitted)).

As to the first prong, indications of a serious medical need "include the existence of an

---

[5] As the Court previously advised Plaintiff (*see* Doc. 7 at 10, n. 5), the Fifth Amendment applies only to the federal government is not applicable to Plaintiff's claims against state agency officials. *See Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008).

[6] Plaintiff's Fourteenth Amendment due process claim was dismissed on May 15, 2025 (*see* Doc. 13 [dismissing "remaining claims"]) and cannot be reasserted here. (*See also* Doc. 24 at 3-5 [permitting amendment only to correct those individuals misidentified in original complaint and to identify those previously unknown].)

injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation & internal quotation marks omitted); accord *Wilhelm*, 680 F.3d at 1122; *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) ("Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain").

As to the second prong, deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer*, 511 U.S. at 835 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Deliberate indifference is shown where a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. In medical cases, this requires showing: (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096). "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett*, 439 F.3d at 1096 (citing *McGuckin*, 974 F.2d at 1060).

Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (quoting *Gibson v. Cnty. of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

To prevail on a deliberate indifference claim, a plaintiff must also show that harm resulted from a defendant's wrongful conduct. *Wilhelm*, 680 F.3d at 1122; *see Jett*, 439 F.3d at 1096;

12

1  *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002) (prisoner alleging deliberate indifference
2  based on delay in treatment must show delay led to further injury).

<u>Analysis</u>

Liberally construing the first amended complaint and accepting all facts as true, Plaintiff meets the first prong of the deliberate indifference to serious medical needs test by alleging the presence of a serious medical condition that significantly affects his daily activities or the existence of chronic and serious pain in the form of obstructive sleep apnea and the need for the prescribed CPAP device. *Colwell*, 763 F.3d at 1066.

Considering the second prong, Plaintiff sufficiently alleges the named Defendants failed to respond to his pain and medical need for a CPAP device and the ongoing harm because of his inability to obtain that device. He describes gasping for air and sleep disruption "night after night" for an eight-month period, as well as headaches, panic and anxiety. Plaintiff asserts each of these individuals was personally aware of his diagnosis and his need for the CPAP device via by discussions and/or written or email correspondence, including all named Defendants' receipt of his January 2022 letter to each indicating CPAP devices were available for purchase at various vendors (contrary to their statements concerning a worldwide shortage affecting its availability), that Plaintiff or his family would pay for the device, and that Plaintiff was amenable to any payment and shipping procedures preferred by CDCR. He asserts all failed to take any action. As concerns Defendant McCoy, Plaintiff further asserts he met with McCoy a few times and they discussed obstructive sleep apnea diagnoses and the pain the disorder causes, yet McCoy still failed to act. *Wilhelm*, 680 F.3d at 1122.

In sum, Plaintiff sufficiently alleges that Defendants McCoy, McDaniel, Russell, Moshe, Crawford, Vasquez, and Fincalero knew that Plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate the risk. *Farmer*, 511 U.S. at 847; *Wilhelm*, 680 F.3d at 1122.

## V.   CONCLUSION AND ORDER

For the reasons stated above, Plaintiff's first amended complaint states cognizable Eighth Amendment deliberate indifference to serious medical needs claims against Defendants McCoy,

McDaniel, Russell, Moshe, Crawford, Vasquez, and Fincalero. The Court will issue a separate order directing service of the first amended complaint to those newly identified and unserved defendants: McCoy, Moshe and Fincalero.

The Clerk of the Court is **DIRECTED** to update the docket for this action to:

1. **SUBSTITUTE** "Terrence McCoy" as Defendant for "Moore, Respiratory Therapist" and "Dr. Moshe" for "M. Bean, Psychologist;" and

2. **ADD** as Defendant "F. Fincalero."

IT IS SO ORDERED.

Dated: __**January 9, 2026**__                    _____
                                                                         UNITED STATES MAGISTRATE JUDGE

14