UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SAAHDI ABDUL COLEMAN,

Plaintiff,

v.

TERRENCE McCOY, et al.,

Defendants.

Case No.: 1:23-cv-00324-KES-CDB

**FINDINGS AND RECOMMENDATIONS TO DENY DEFENDANTS' MOTION TO DISMISS**

(Doc. 40)

**FINDINGS AND RECOMMENDATIONS TO DENY DEFENDANT ZUTLER'S MOTION TO DISMISS**

(Doc. 52)

14-Day Objection Period

Plaintiff Saahdi Abdul Coleman is proceeding pro se and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. section 1983.

**I. PROCEDURAL BACKGROUND**

On January 12, 2026, the Court issued its Order Finding Service Appropriate as to Newly Added or Identified Defendants. (Doc. 29.) The Court summarized in this order the claims deemed cognizable by the Court: "this case now proceeds against Defendants Crawford, Fincalero, McCoy, McDaniel, Moshe, Russell, and Vasquez," and specifically directed service be effected on "Terrence McCoy," "Moshe," and "F. Fincalero." (*Id*. at 1-2.)[1]

[1] A previous motion to dismiss filed on behalf of Defendants McDaniel, Russell, Bean, Moore, Crawford, and Vasquez (Doc. 23) was dismissed as moot on October 17, 2025. (*See* Doc. 24.)

On January 15, 2026, a notice of intent to waive service was filed on behalf of Defendants McCoy and Fincalero (Doc. 31) whereas a notice of intent not to waive service was filed for Defendant "Moshe" (Doc. 32).

On March 16, 2026, following the filing of executed waivers of service by Fincalero and McCoy, Defendants Crawford, Fincalero, McCoy, McDaniel, Russell and Vasquez filed a timely motion to dismiss.[2] (Doc. 40.)

Immediately prior to and after the filing by certain defendants of their motion to dismiss, the Court undertook proceedings with noticed defense counsel to determine the status of service of Moshe Zutler, M.D.[3] (*See* Docs. 35, 38, 39, 41, 42 & 46.)

On May 7, 2026, following an extension of time, Plaintiff filed an opposition to Defendants' pending motion to dismiss. (Docs. 48 & 49.) Defendants filed a reply on May 22, 2026. (Doc. 50.)

After the various defendants' motion to dismiss was fully briefed, on June 30, 2026, Defendant Moshe Zutler filed a separate motion to dismiss and a request for judicial notice. (Docs. 52 & 53.)

Following another extension of time, on August 21, 2026, Plaintiff filed an opposition to Zutler's motion to dismiss (Doc. 57) and Zutler replied (Doc. 58).

## II. LEGAL STANDARDS APPLICABLE TO MOTIONS TO DISMISS

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In resolving a 12(b)(6) motion, the Court's review is generally limited to the "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030-31 (9th Cir. 2008) (internal quotation marks & citations omitted). Dismissal is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged

---

[2] Where appropriate, the Court distinguishes between Defendants Crawford, Fincalero, McCoy, McDaniel, Russell and Vasquez and Defendant Zutler by referring to the former individuals as "Defendants" and the latter as "Defendant Zutler" or "Zutler."

[3] Defendant "Moshe" was eventually identified as Moshe Zutler, M.D. (*See* Doc. 41.)

under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court "accept[s] as true all well-pleaded allegations of material fact, and construe[s] them in the light most favorable to the non-moving party." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (citation omitted). In addition, the Court construes pleadings of pro se prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard … applies only to a plaintiff's factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989).

## III. LEGAL STANDARDS APPLICABLE TO PLAINTIFF'S CLAIMS

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need is serious if failure to treat it will result in '"significant injury or the unnecessary and wanton infliction of pain."'" *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (9th Cir. 2014) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096 (quotation marks omitted)).

As to the first prong, indications of a serious medical need "include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily

activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation & internal quotation marks omitted); accord *Wilhelm*, 680 F.3d at 1122; *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) ("Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain").

As to the second prong, deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Deliberate indifference is shown where a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847. In medical cases, this requires showing: (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Wilhelm*, 680 F.3d at 1122 (citing *Jett*, 439 F.3d at 1096). "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett*, 439 F.3d at 1096 (citing *McGuckin*, 974 F.2d at 1060).

Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id*. at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id*. (quoting *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2022)).

To prevail on a deliberate-indifference claim, a plaintiff must also show that harm resulted from a defendant's wrongful conduct. *Wilhelm*, 680 F.3d at 1122; *see Jett*, 439 F.3d at 1096; *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002) (prisoner alleging deliberate indifference based on delay in treatment must show delay led to further injury).

## IV. PLAINTIFF'S FACTUAL ALLEGATIONS

In screening the first amended complaint, the Court summarized Plaintiff's allegations:

> Plaintiff states he is a participant in the mental health program. (Doc. 27 at 4.) Plaintiff contends inmates in the program are regularly ridiculed and victimized, whether those inmates are "psychotic and delusional" or "just worn down by extended periods of incarceration." (*Id.*) Plaintiff contends he is a college graduate who has obtained "laudatory chronos" for his work tutoring other inmates. (*Id.*) He also states he has obtained certificates concerning his communication skills, however, when staff see his mental health program designation, they treat him as though his mental capacity is diminished and deny him his rights. (*Id.*)
>
> Plaintiff contends that on July 22, 2021, he "passed out after struggling for breath," and was taken to an outside hospital for treatment. (Doc. 27 at 4.) A diagnosis was not immediately determined, and Plaintiff was scheduled for several tests to be conducted over the next several months. (*Id.*) On September 21, 2021, Plaintiff was seen by Defendant McCoy. (*Id.*) On October 7, 2021, Plaintiff was advised by Defendant Moshe that he had been diagnosed with moderate obstructive sleep apnea. (*Id.*) Plaintiff was told that "Apnea-Hypopnea Index (AHI) was a measurement system that determined the severity" of his condition. (*Id.*) His AHI measured between 15 and 30 breathing pauses per hour during sleep. (*Id.*)
>
> Plaintiff alleges Defendant Moshe informed him that sleep apnea was a serious condition that left untreated could result in or lead to sudden death, heart failure, stroke, diabetes, high blood pressure, obesity, or extreme fatigue. (Doc. 27 at 4.) Defendant Moshe prescribed a continuous positive airway pressure (CPAP) machine; Defendant McCoy placed the order. (*Id.*) Defendant Moshe further advised Plaintiff he was enrolled in the Chronic Care Program. (*Id.*)
>
> Plaintiff asserts the diagnosis was a shock because he was active, playing basketball and football, and now faced a "lifelong medical condition that could kill" him. (Doc. 27 at 4.) Plaintiff was affected every day, waking nightly unable to breathe. (*Id.*) He states he had to use his fingers to open his airway. (*Id.*) His cognitive faculties were affecting his ability to perform basic tasks. (*Id.*) Plaintiff states he was constantly fatigued, and his appearance changed. (*Id.*) He states the worst part was the fear and pain he experienced, waking alone in solitary confinement "even though [he] had done nothing wrong, scared and in pain." (*Id.*) He feared not waking and dying in his sleep. (*Id.*)
>
> Plaintiff contends the pain he suffered was unnecessary. (Doc. 27 at 4.) He asserts that according to Defendants Moshe, Fincalero, McCoy, Russell, Crawford and Vasquez, the reason Plaintiff had not yet received the "prescribed treatment was because there was a 'worldwide shortage of CPAP machines.'" (*Id.* at 4-5.) Defendants' position did not change even after Plaintiff "provided them with a list of companies that had CPAP machines in stock ready to ship." (*Id.*

at 5.) Next, Plaintiff alleges that, within days of the diagnosis, his mother, along with several family members and his domestic partner, and "Power of Attorney Gina Lynn Gonzales," a registered nurse for over 20 years, were able to identify ten companies that had available CPAP machines ready for shipment. (*Id.*) Several of the companies had previously provided medical equipment to the California Department of Corrections and Rehabilitation (CDCR). (*Id.*) Plaintiff asked Ms. Gonzales to prepare a letter listing those companies and "that documented the fact that she had [his] $1400.00 stimulus payment," and was authorized to use those funds for the purchase of a CPAP machine. (*Id.*) The letter also stated that "we would defer to CDCR in how the CPAP machine would be purchased," making clear Plaintiff was "open to whatever CDCR wanted" or required concerning the purchase that would enable Plaintiff to receive the prescribed treatment. (*Id.*)

On January 11, 2022, the letter was sent to "Defendants Chief Medical Officer, Respiratory Therapist, Primary Care Physician, and all Corcoran medical personnel." (Doc. 27 at 5.) None responded. (*Id.*) Plaintiff contends that in CDCR, written communications received by medical personnel or custody staff are stamped and logged as received. (*Id.*) Plaintiff asserts he has possession of "the officially stamped documents" establishing "that the defendants knew that there were CPAP machines available" at no cost to CDCR "and they chose to allow [him] to suffer [unnecessarily]." (*Id.*)

Plaintiff asserts that when a response was not received, he personally contacted the facility's litigation coordinator. (Doc. 27 at 5.) He provided the litigation coordinator with copies of Ms. Gonzales's letter and "requested that the letters be delivered to Defendants Chief Medical Officer, Respiratory Therapist, Primary Care Physician, and all concerned medical staff." (*Id.*) Plaintiff states he possesses a response from the litigation coordinator stating delivery was made. (*Id.*) Further, Plaintiff states he personally provided a copy of the letter to Defendants Russell and Crawford, who "chose to do nothing to abate the risk" of harm he suffered. (*Id.*) Plaintiff contends Russell and Crawford failed to provide him "medical attention for the visible bruising of [his] neck." (*Id.*)

On March 30, 2022, Plaintiff states he "had IDTT with a team of mental health members." (Doc. 27 at 6.) Plaintiff informed "them and [his] psychologist J. Fakhoury" that sleep apnea was affecting his daily activities and quality of life, and that he was in pain. (*Id.*) He advised them his family had located multiple CPAP machines and that they were willing to purchase it and would allow CDCR medical staff to deal directly with the seller to determine shipping. (*Id.*) Plaintiff maintains Psychiatric Technician Maximo Torres emailed Defendant McCoy during the meeting, but McCoy did not respond. (*Id.*) Plaintiff followed up with Dr. Fakhoury. (*Id.*) Plaintiff states he has a copy of the relevant health care services form, documenting the email sent by Mr. Torres, and states Dr. Fakhoury "will be able to testify to these facts." (*Id.*)

When Plaintiff personally provided Ms. Gonzales's letter to Defendant Vasquez, Vasquez informed Plaintiff that a CPAP

machine would not be available until sometime in 2023 due to the worldwide shortage. (Doc. 27 at 6.) Plaintiff states he was "really frustrated" with "continually being ignored and told that no CPAP machines were available" despite the information he had provided and his offer to pay for it. (*Id.*)

On January 12, 2022, Plaintiff filed a health care grievance requesting treatment for sleep apnea and a transfer to a medical facility. (Doc. 27 at 6.) On January 31, 2022, he filed an inmate appeal requesting treatment. (*Id.* at 6-7.) On March 25, 2022, Plaintiff filed a health care grievance requesting treatment for sleep apnea. (*Id.* at 7.) On March 27, 2022, he filed an inmate appeal seeking to be transferred out of solitary confinement. (*Id.*)

In April 2022, a psychiatric technician "named Ms. Miller" expressed her concern that Plaintiff had been sitting in his cell "in the dark all day." (Doc. 27 at 6.) After Plaintiff explained he was tired and in pain, and "kinda felt like giving up," the woman informed him that CDCR "was under a standing Court order to provide a certain level of medical and mental health care." (*Id.*) She provided Plaintiff with the address of the attorneys handling the case and "told [him] to write them." (*Id.*)

On April 12, 2022, Plaintiff wrote to the Law Firm of Rosen, Bien, Galvan and Grunfeld, LLP. (Doc. 27 at 6.) He advised he had not received the "physician prescribed medical treatment," was in pain, and "had been held in solitary confinement long-term for non-disciplinary reasons." (*Id.*)

On April 15, 2022, Plaintiff learned another inmate diagnosed with mild sleep apnea had been issued a CPAP machine. (Doc. 27 at 6.) The following day, Plaintiff sent a letter to "Defendants Chief Medical Officer, Respiratory Therapist, Primary Care Physician, and all concerned medical personnel requesting help." (*Id.*) The letter stated Plaintiff was in pain, had not received a CPAP machine for six months despite his family locating available units and being willing to purchase one, and was being ignored by medical staff. (*Id.*) Plaintiff requested that he immediately be issued a CPAP machine. (*Id.*)

On May 5, 2022, Plaintiff received a reply from the Rosen law firm stating they had forwarded his "letter pleading for help to the Prison Law Office." (Doc. 27 at 7.)

On June 6, 2022, Plaintiff received a letter from Dewi Zarni, litigation assistant to Alison Hardy of the Prison Law Office. (Doc. 27 at 7.) The letter indicated "they had contacted the California Correctional Health Care Services and receivers office of legal affairs." (*Id.*) Quoting from it, Plaintiff states it requested "that 'In the light of Mr. Coleman's complaints of disturbed sleep and suffering choking episodes, can his order for a new machine be prioritized?'" (*Id.*)

Three days later, on June 9, 2022, Plaintiff was issued a CPAP machine. (Doc. 27 at 7.) Two weeks later, Plaintiff was transferred

to a medical facility. (*Id.*) Plaintiff contends Defendant Vasquez lied when she indicated CPAP machines would not be available until 2023. (*Id.*) He states when attorneys became involved "and there was a hint that litigation was a possibility, there was suddenly CPAP machines available. Not just for [Plaintiff] but for other inmates within the facility, as well as room for us to be transferred to a medical facility where our chronic condition could be [monitored]." (*Id.*)

Plaintiff asserts Defendant McDaniel "stated, 'California law directs your health care providers to offer and provide only the care they determine to be currently medically on clinically necessary for you.'" (Doc. 27 at 8.) Plaintiff states: "My only question is; Wouldn't a physician diagnosed chronic condition be medically or clinically necessary." (*Id.*)

Next, Plaintiff asserts he met with Defendant McCoy "a few times." (Doc. 27 at 8.) They spoke of his requests concerning a CPAP machine. (*Id.*) McCoy also suffers from sleep apnea and expressed to Plaintiff some of his own pain and suffering experiences prior to obtaining treatment himself. (*Id.*) Despite having personal knowledge of Plaintiff's condition and its affect, McCoy failed to provide Plaintiff with the "treatment he ordered and knew" Plaintiff needed. (*Id.*) Plaintiff asserts that within two weeks of receiving proper treatment, there was a noticeable improvement in his quality of life. (*Id.*) Plaintiff asserts all the pain and suffering endured over an eight-month period was preventable. (*Id.*)

Plaintiff contends he did not have to suffer the way he did. (Doc. 27 at 8.) Despite the letters, grievances, and complaints, Plaintiff was ignored and marginalized, noting "how indifferent the defendants were to the suffering of someone under their care and control." (*Id.*) Plaintiff contends his obstructive sleep apnea was diagnosed after a study revealed "an AHI of 24.2 events per hour," a "serious level disruption" that Defendant Moshe warned Plaintiff was potentially life threatening without treatment. (*Id.*) Plaintiff contends the prescribed remedy is a CPAP machine, which prevents repeated oxygen deprivation and averts "devastating complications like cardiovascular disease, stroke, or sudden death." (*Id.*)

Next, Plaintiff states that "for over eight agonizing months," he was denied a CPAP machine "as the defendant played Russian Roulette with" his life. (Doc. 27 at 9.) He asserts that "[n]ight after night, [he] gasped desperately for air, jolted awake in sheer panic alone in a solitary confinement cell even though" he had done nothing wrong. (*Id.*) Plaintiff contends he "endured crushing headaches, and battled unrelenting exhaustion and terror, knowing that each untreated night pushed [him] closer to irreversible harm." (*Id.*) He maintains it "was not a mere inconvenience, it was prolonged, preventable torture that defendants knowingly allowed to fester. Each [named] defendant had personal knowledge of [his] condition and are individually liable for their actions, omissions, and indifference." (*Id.*)

Further, Plaintiff contends each Defendant had personal knowledge of the severity of his condition because Plaintiff personally pleaded

> with them, describing details and the impacts to his life. (Doc. 27 at 9.) Plaintiff alleges all dismissed his "cries with claims of a 'worldwide shortage'" of CPAP machines, revealed to be a lie. (*Id.*) Plaintiff maintains that instead of taking action to abate the risk of harm to him, Defendants "chose to do nothing," allowing him to suffer for months. (*Id.*) Plaintiff states he "could have died during [any one] of the 24.2 AHI events." (*Id.*) He asserts there "were so many options available," yet "[s]omething as simple as moving" Plaintiff into medical housing did not occur. (*Id.* at 10.)
>
> In conclusion, Plaintiff asserts he "was in total agreement with the diagnosis and the course of treatment … didn't care how it was carried out" and "just wanted to be treated. (Doc. 27 at 10.) Plaintiff contends the named Defendants "had the power and the authority to treat" his condition and that Plaintiff has shown they acted with deliberate indifference: their "actions were reckless, [their] conduct was heartless, and their failure to take any action to abate the risk" to his health and safety makes "them liable as a matter of law." (*Id.*)

(Doc. 28 at 5-10 [footnotes omitted].)

In analyzing Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claim, the Court determined the following:

> Liberally construing the first amended complaint and accepting all facts as true, Plaintiff meets the first prong of the deliberate indifference to serious medical needs test by alleging the presence of a serious medical condition that significantly affects his daily activities or the existence of chronic and serious pain in the form of obstructive sleep apnea and the need for the prescribed CPAP device. *Colwell*, 763 F.3d at 1066.
>
> Considering the second prong, Plaintiff sufficiently alleges the named Defendants failed to respond to his pain and medical need for a CPAP device and the ongoing harm because of his inability to obtain that device. He describes gasping for air and sleep disruption "night after night" for an eight-month period, as well as headaches, panic and anxiety. Plaintiff asserts each of these individuals was personally aware of his diagnosis and his need for the CPAP device via by discussions and/or written or email correspondence, including all named Defendants' receipt of his January 2022 letter to each indicating CPAP devices were available for purchase at various vendors (contrary to their statements concerning a worldwide shortage affecting its availability), that Plaintiff or his family would pay for the device, and that Plaintiff was amenable to any payment and shipping procedures preferred by CDCR. He asserts all failed to take any action. As concerns Defendant McCoy, Plaintiff further asserts he met with McCoy a few times and they discussed obstructive sleep apnea diagnoses and the pain the disorder causes, yet McCoy still failed to act. *Wilhelm*, 680 F.3d at 1122. In sum, Plaintiff sufficiently alleges that Defendants McCoy, McDaniel, Russell, Moshe, Crawford, Vasquez, and Fincalero knew that Plaintiff faced a substantial risk of serious harm and disregarded that

> risk by failing to take reasonable measures to abate the risk. *Farmer*, 511 U.S. at 847; *Wilhelm*, 680 F.3d at 1122.

(Doc. 28 at 13.)

**V. REQUESTS FOR JUDICIAL NOTICE**

Defendants and Zutler ask the Court to take judicial notice of the following:

1. The United States Food and Drug Administration (USFDA) webpage concerning Philips' June 14, 2021, recall of CPAP devices, published August 15, 2024;
2. A press release from Philips dated June 14, 2021, concerning the recall of certain sleep and respiratory care devices;
3. A January 20, 2022, memorandum issued by California Correctional Health Care Services (CCHCS) concerning CPAP devices;
4. Excerpts from the CCHCS Department Operations Manual regarding durable medical equipment (DME), supplies, and accommodations; and
5. The institutional level response to Plaintiff's health care grievance log number COR HC 22000840 dated August 3, 2022.

(Docs. 40-1 & 53.) Plaintiff did not oppose these requests. (*See* Docs. 48 & 57.)

A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). However, "[j]ust because [a] document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 999 (9th Cir. 2018). Although a court may "take judicial notice of undisputed matters of public record," it may not take judicial notice of reasonably disputed facts simply because they are "stated in [a] public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001).

Accordingly, the Court takes judicial notice of the following:

1. USFDA webpage (https://www.fda.gov/medicaldevices/recalled-philips-ventilators-bipap-machines-and-cpap-machines/recommendationsrecalled-philips-ventilators-

bipap-machines-and-cpap-machines#risk). *See United States v. Carrasco*, 813 F. App'x 275, 277 n.1 (9th Cir. 2020); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010).

2. Philips press release dated June 14, 2021 (https://www.usa.philips.com/aw/about/news/archive/standard/news/press/2021/20210614-philips-issues-recall-notification-to-mitigate-potential-health-risks-related-to-the-sound-abatement-foam-component-in-certain-sleepand-respiratory-care-devices/). *See Heliotrope General, Inc. v. Ford Motor Co*., 189 F.3d 971, 981, n.18 (9th Cir. 1999) (taking judicial notice "that the market was aware of the information contained in news articles"); *In re Wet Seal, Inc. Securities Litigation*, 518 F.Supp.2d 1148, 1157 (C.D. Cal. 2007) ("the Court may also take judicial notice of other matters of public record such as press releases, analyst reports, news articles, and conference call transcripts in cases such as this, where they are relied upon by the complaint"); *Cullen v. Ryvyl Inc*., No. 3:23-cv-0185-GPC-SBC, 2024 WL 4536471, at *4 (S.D. Cal. Oct. 21, 2024) (noting courts "routinely take judicial notice of SEC press releases").
3. CCHCS Department Operations Manual excerpts. *See Brown v. Valoff*, 422 F.3d 926, 931, n.7 (9th Cir. 2005).
4. Institutional level response dated August 3, 2022 to Plaintiff's health care grievance log number COR HC 22000840. *See City of Sausalito v. O'Neill*, 386 F.3d 1186, 1224 n.2 (9th Cir. 2004) ("We may take judicial notice of a record of a state agency not subject to reasonable dispute").

However, the court does not assume the truth of the facts asserted in the documents. *Khoja*, 899 F.3d at 999; *see, e.g., Tri v. Gutierrez*, No. 1:22-cv-00836-KES-SKO (PC), 2024 WL 1801392, at *3 (E.D. Cal. Apr. 25, 2024) (citing *M/V Am. Queen v. San Diego Marine Constr. Corp*., 708 F.2d 1483, 1491 (9th Cir. 1983)).

The Court declines to take judicial notice of the CCHCS memorandum dated January 20, 2022, as there is no indication the internal memorandum was published. *See, e.g.*, *Ter-Galstanyan v. County of Kern*, No. 1:22-cv-00645-JLT-CDB, 2024 WL 1971819, at *4, n.7 (E.D. Cal. May 3,

2024) ("the Court declines to take judicial notice of the D.A. Office's Memorandum as the Memorandum is attached to Plaintiffs' opposition, and there is no indication the Memorandum was publicly available") (citing *Lotus Vaping Techs, LLC v. U.S. Food & Drug Admin*., 73 F.4th 657, 677 (9th Cir. 2023) (judicial notice of FDA's internal memoranda appropriate because they are published)).

## VI. PLAINTIFF'S OPPOSITION EXHIBITS

Plaintiff's opposition to Defendants' motion includes Exhibits 1 through 11. However, as noted above, in resolving a Rule 12(b)(6) motion, the Court's review is generally limited to the "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Manzarek*, 519 F.3d at 1030-31.

Specifically, Plaintiff offers the following exhibits:

1. A copy of a letter addressed to CSP-COR officials dated January 11, 2022 authored by Gina Gonzales regarding CPAP
2. A copy of the Headquarters Level Response from CCHCS regarding Plaintiff's health care grievance number COR HC 22000182 dated July 6, 2022; a copy of the related grievance signed by Plaintiff on January 12, 2022; a copy of the grievance appeal dated April 17, 2022; a copy of the Institutional Level Response from CSP-COR signed April 5, 2022
3. A copy of the Office of Grievances Decision dated February 8, 2022 concerning grievance log number 000000218306; a copy of Plaintiff's grievance dated January 31, 2022; a copy of the Claimant Grievance Receipt Acknowledgment from the Office of Grievances at CSP-COR dated February 1, 2022
4. A copy of a document titled "Mental Health IDTT MPage Forms," reflecting an encounter date of March 30, 2022
5. A letter to CSP-COR officials dated April 16, 2022 authored by Plaintiff regarding CPAP
6. A copy of an Inmate Request for Interview form dated February 28, 2022, completed by Plaintiff and directed to the litigation coordinator

7. A copy of the Headquarters Level Response from CCHCS regarding Plaintiff's health care grievance number COR HC 22000875 dated November 10, 2022; a copy of the Institutional Level Response from CSP-COR regarding that grievance dated August 3, 2022; a copy of the health care grievance appeal completed by Plaintiff on August 17, 2022; a copy of the health care grievance completed by Plaintiff on May 25, 2022
8. A copy of a memorandum from the Prison Law Office dated May 25, 2025 to CCHCS and the Receiver's Office of Legal Affairs regarding "*Plata* – Individual Patient Concern – Request for Interview"
9. A copy of a memorandum from CCHCS to Alison Hardy with the Prison Law Office dated June 14, 2022 regarding "Prison Law Office Request for Review of *Plata* Patient Concerns Relating to Patient Saahdi Coleman, T99368"
10. A copy of Consultation Notes reflecting a service date of June 9, 2022 concerning a respiratory therapy consultation
11. A copy of a CCHCS Receipt of Health Records form relating to 75 pages of printed records regarding Plaintiff and reflecting the period between September 22, 2021 and June 9, 2022; a copy of a CCHCS Declaration of Custodian of Records dated September 4, 2025; a copy of Progress Notes reflecting a service date of May 28, 2022; a copy of Progress Notes reflecting a service date of February 15, 2022

(*See* Doc. 49 at 3-54.)

Evidence extraneous to the complaint should not be considered when ruling on a motion to dismiss for a failure to state a claim. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001). Plaintiff's proffered exhibits are not attached to the first amended complaint, nor are those exhibits the subject of a request for judicial notice. However, a court may consider evidence on which the complaint "necessarily relies" if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion. *See Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *see also Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 n.5

(9th Cir. 2003). The court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). *E.g.*, *Ridings v. PeaceHealth*, -- F.4th --, No. 24-7282, 2026 WL 2871881, at *3-4 (9th Cir. Sept. 24, 2026) (reversing district court for failing to consider on defendant's motion to dismiss the contents of a letter that was referenced in plaintiff's complaint and central to the claim and, thus, incorporated by reference into the complaint).

The operative complaint references Ms. Gonzales's letter, grievance COR HC 22000182,[4] a March 30, 2022 IDTT meeting, Plaintiff's own letter of April 16, 2022, Plaintiff's receipt of the Prison Law Office letter directed to CCHCS, and his having been issued a CPAP machine on June 9, 2022. Therefore, this Court will consider Exhibit numbers 1, 2, 4, 5, 8, and 10 attached to Plaintiff's opposition. *See Branch*, 14 F.3d at 453-54; *Ridings*, 2026 WL 2871881, at *4. However, Exhibit numbers 3, 6, 7, 9 and 11 are not considered. *See Arpin*, 261 F.3d at 925.

***Plaintiff's References to Alternative Housing Arrangements & Philips***

While Defendants do not oppose Plaintiff's exhibits on the basis of authenticity[5], they argue that the Court should disregard "allegations and exhibits Coleman included for the first time in his Opposition, specifically his assertions in the Opposition that he should have been provided alternative housing arrangements" and that he did not use a Philips device. (Doc. 50 at 6-8.) Specifically, Defendants maintain that because Plaintiff's first amended complaint "does not reference or otherwise mention [housing] alternatives in addition to being provided a CPAP device, including any allegations regarding placement in a prison medical facility," those assertions "improperly assert a new, unpled theory." (*Id.* at 6.) Additionally, Defendants contend Plaintiff's opposition argument that he never used a Philips CPAP device and thus his non-use

---

[4] Plaintiff identifies the grievance number as "2200982" in the operative complaint (*see* Doc. 27 at 6); this mistake is understandable considering the handwritten number affixed to the grievance by staff (*see* Doc. 49 at 8). In any event, the dates referenced in the operative complaint are consistent with this exhibit.

[5] Defendants argue the Court should disregard Plaintiff's exhibits in support of his opposition because they are evidence outside the first amended complaint. (Doc. 50 at 7-8.) For the reasons set forth above, certain exhibits submitted are properly considered.

"'did not preclude the provision of devices from other manufacturers'" is an unpled legal theory that "misstates how commercial markets operate." (*Id*. at 6-7.)

This action proceeds on Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claims against Defendants Crawford, Fincalero, McCoy, McDaniel, Russell, Vasquez, and Zutler. (*See* Doc. 13 [Order Adopting Findings and Recommendations] & 28 [Second Screening Order].) As noted above (*see* section IV., *ante*), the undersigned's analysis in finding these claims cognizable did not reference housing alternatives.[6] Nor did Plaintiff allege he had never used a Philips CPAP device in the first amended complaint. Thus, to the extent Plaintiff's opposition seeks to assert allegations concerning alternative housing arrangements or an additional theory of liability not pled in the operative complaint, the alternative housing assertions and new theory of liability are not considered here.

## VII. DISCUSSION

Defendants argue they are entitled to qualified immunity because it was not clearly established that not providing Plaintiff with a CPAP device violated Plaintiff's rights during "a world-wide recall affecting 15 million CPAP devices." Further, Defendants contend Plaintiff fails to state an Eighth Amendment deliberate indifference claim against Defendants Crawford, Fincalero, and Russell because there are no facts to indicate those individuals knew Plaintiff was experiencing a serious medical need. Next, Defendants argue the same pleading deficiencies infect Plaintiff's claim against Defendant Vasquez and further assert that Plaintiff's factual allegations "show the opposite of deliberate indifference" because she provided status updates to Plaintiff and the medical care Plaintiff "believed he should have been provided was beyond her control." Further, Defendants maintain Plaintiff fails to state a claim against Defendant McDaniel because the letters sent to McDaniel are insufficient to establish his knowledge and Plaintiff did not allege McDaniel received the letter. Finally, as concerns Defendant McCoy, Defendants maintain Plaintiff's claim is insufficient because he fails to allege McCoy received the letters and that a September 21, 2021, encounter with McCoy occurred prior to Plaintiff's diagnosis of sleep

[6] The Court acknowledged in its screening order Plaintiff's vague and conclusory references to "so many options available" and "[s]omething as simple as moving" Plaintiff to medical housing (*see* Doc. 28 at 10.)

apnea and CPAP prescription.

### *A. Qualified Immunity*

Defendants and Zutler argue they are entitled to qualified immunity. (*See* Doc. 40 at 14-18 & Doc. 52 at 10-14.)

"Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established" at the time it is alleged to have been violated. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), overruled in part on other grounds by *Pearson v. Callahan*, 555 U.S. 223 (2009).

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent," meaning "it is dictated by 'controlling authority' or 'a robust consensus of cases of persuasive authority.'" *D.C. v. Wesby*, 583 U.S. 48, 63 (2018) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42 (2011)). Stated differently, "[a] right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rosenbaum v. City of San Jose*, 107 F.4th 919, 924 (9th Cir. 2024) (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021)) (citation omitted). The plaintiff bears the burden of proof that the right allegedly violated was clearly established at the time of the alleged misconduct. *Hopson v. Alexander*, 71 F.4th 692, 708 (9th Cir. 2023); *Romero v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991).

"For a constitutional right to be clearly established, a court must define the right at issue with specificity and not ... at a high level of generality." *Gordon v. Cnty. of Orange*, 6 F.4th 961, 968 (9th Cir. 2021) (citation and internal quotations omitted). When identifying the right that was allegedly violated, a court must define the right more narrowly than the constitutional provision guaranteeing the right, but more broadly than all of the factual circumstances surrounding the

alleged violation. *See Watkins v. City of Oakland, Cal.*, 145 F.3d 1087, 1092–93 (9th Cir. 1998). "The Supreme Court has 'repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage of litigation." *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

While a defendant may raise a qualified immunity defense at an early stage in the proceeding, the defense may not be amenable to dismissal by way of a motion made pursuant to Rule 12(b)(6) where facts necessary to establish the affirmative defense implicate matters outside the complaint or disputed issues of fact. *See Morley v. Walker*, 175 F.3d 756, 761 (9th Cir. 1999). Nevertheless, a qualified immunity defense properly may be resolved by a Rule 12(b)(6) motion bearing in mind that, on a motion to dismiss, a court must accept the allegations in the complaint as true when determining whether a defendant is entitled to immunity. *See Polanco v. Diaz*, 76 F.4th 918, 925 (9th Cir. 2023); *see also Butler v. San Diego Dist. Attorney's Office*, 370 F.3d 956, 963 (9th Cir. 2004).

Qualified immunity is a fact-intensive determination. *See Saucier*, 533 U.S. at 201. The cornerstone of the qualified immunity analysis is the reasonableness of the official's conduct. *See Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1075-76 (9th Cir. 2011) ("The linchpin of qualified immunity is the reasonableness of the official's conduct"); *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken" (internal quotation marks & citations omitted)).

Here, Defendants maintain that considering the allegations in the light most favorable to Plaintiff means that reasonable prison officials in their positions "would not have known that not providing" Plaintiff with a CPAP device in the face of a worldwide shortage was unlawful. Indeed, they claim Plaintiff's complaint bolsters that belief because it does not involve an assertion that "CSP Corcoran or CDCR had a CPAP device" for Plaintiff's use. Defendants primarily cite to two Ninth Circuit cases and an order in the Northern District of California to support their argument: *Neely v. Feinstein*, 50 F.3d 1502, 1505, 1511 (9th Cir. 1995); *Lucas v.*

*Silva*, No. C 07-1673 CW (PR), 2011 WL 1196920, at *8-9 (N.D. Cal. Mar. 30, 2011); *Brown v. Mason*, 288 F. App'x 391, 392-93 (9th Cir. 2008). However, those cases involve the application of qualified immunity at the summary judgment stage. *Neely*, 50 F.3d at 1505; *Lucas*, 2011 WL 1196920, at *1; *Brown*, 288 F. App'x at 392. Here, even considering the worldwide shortage of Philips CPAP devices, the undersigned cannot determine, based on the amended complaint itself, that qualified immunity applies. *O'Brien*, 818 F.3d at 936. For purposes of determining the viability of a qualified immunity defense only upon the pleadings in the face of Defendants' Rule 12(b) motion to dismiss, the Court concludes that it was clearly established at the time of the operative events at issue that a prison official on notice of a prisoner's need for care cannot deny, delay, or interfere with necessary medical treatment. *See, e.g., Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir. 2002) (citing cases).

The undersigned finds the facts alleged in the first amended complaint, taken in the light most favorable to Plaintiff, demonstrate that Defendants' and Zutler's conduct raises factual issues regarding violating a constitutional right. Taking the Plaintiff's allegations as true at the pleading stage, a reasonable official could infer that *ignoring* Plaintiff's requests for a CPAP device despite a worldwide shortage of such devices, where Plaintiff identified available alternatives, offered to pay for the alternative device, and notified all Defendants of same, would subject him to a substantial risk of harm. In short, the existence of regulations and prison policy restricting the provision and use of DME equipment like a CPAP device does not speak to any belief held by Defendants or what they "would have" known or thought because there is no evidence of such a belief before the Court, unlike in *Neely*, *Lucas*, and *Brown.* Given the factual inquiry necessary for qualified immunity, the Court finds it cannot determine the issue at this time. *Saucier*, 533 U.S. at 201; *Keates*, 883 F.3d at 1235; *Brown v. Grove*, 647 F. Supp. 2d 1178, 1183 (C.D. Cal. 2009) ("fact-intensive issues pertinent to a qualified immunity defense, particularly whether the defendant's conduct was reasonable, are better left to summary judgment") (citation omitted).

///

///

### *B. Eighth Amendment Deliberate Indifference Claims Against Crawford, Fincalero, and Russell*

Defendants contend Plaintiff's factual allegations fail to establish Defendants Crawford, Fincalero, and Russell knew Plaintiff had a serious medical need. They contend the January letter does not contain a description of Plaintiff's symptoms, does not allege Fincalero received the letter, and that "the letter was limited to listing companies that supposedly had CPAP devices in stock and stating that Coleman had over $1,000 of his personal funds available to purchase a CPAP device with this own money." Hence, Defendants argue that Crawford, Fincalero, and Russell were not notified that Plaintiff had a serious medical need relating to his not having a CPAP device.

First, Plaintiff's operative complaint alleges that he personally provided the January 2022 letter to Defendants Crawford and Russell. Plaintiff additionally alleges the letter was sent to "all Corcoran medical personnel," which would include Nurse Crawford, Nurse Practitioner Fincalero, and Dr. Russell. And, as concerns the January 11, 2022, letter authored by Ms. Gonzales, it references Plaintiff's symptoms as "fatigue, [a] sore and achy throat, trouble breathing, and the fear that he may not wake because he stops breathing in his sleep." (Doc. 49 at 4.) Moreover, Plaintiff alleges his April 2022 letter was sent to "Defendants Chief Medical Officer, Respiratory Therapist, Primary Care Physician, and all concerned medical personnel requesting help." Liberally construed, "all concerned medical personnel" would include these individuals. Plaintiff's letter states more than six months had passed since his diagnosis and that his condition "has gotten exponentially worse." It states he wakes nearly every night feeling as if he is choking, that he has to force his fingers down to his throat to breathe, that he feels pain and fear, that his throat is bruised and he "can barely eat," and that he is so fatigued he cannot "do normal daily activities." He states his mental and physical health are effected and that despite asking for assistance "medical staff members keep brushing [him] off." (*Id*. at 23.) To the extent Defendants argue Plaintiff's allegations do not state these individuals received the letters, the undersigned is not persuaded. Plaintiff alleges he "personally pleaded" with each Defendant, recounting details of his symptoms and their impacts. Plaintiff also alleges he has "officially

stamped documents" establishing that all named Defendants "knew that there were CPAP machines available" at no cost to the institution. Liberally construed, Plaintiff's allegations sufficiently allege Defendants Crawford, Fincalero, and Russell knew Plaintiff had a serious medical need.

Further, Defendants Crawford, Fincalero, and Russell contend that their having informed Plaintiff of the worldwide shortage of CPAP devices does not establish they knew he had a serious medical need for the device, and that even if "such a statement established knowledge that Coleman was experiencing a serious medical need," their belief that such a device was unavailable "shows they could not provide Coleman the medical device" he believes they should have provided him. Finally, they argue they could not have acted in a medically acceptable manner, making their conduct deliberately indifferent, because the medical care Plaintiff believed he was entitled to was beyond their control.

Defendants' assertion that their belief that the worldwide shortage of CPAP devices establishes they were unable to provide Plaintiff with a CPAP device does not entitle them to dismissal of Plaintiff's claims at this stage of the proceedings. The worldwide shortage pertained to Philips CPAP machines. But, construing Plaintiff's complaint liberally and affording him the benefit of every doubt, Plaintiff has alleged sufficient facts to indicate the shortage need not have precluded Plaintiff from obtaining such a device. The January 2022 letter identifies 10 "companies that currently have CPAP machines in stock" and indicates Ms. Gonzales was authorized to use Plaintiff's "1400.00 stimulus payment for the immediate purchase of a CPAP machine," whether directly or after providing payment to prison officials to facilitate that purchase. (Doc. 49 at 4.) And Plaintiff's April 2022 letter states that several inmates had been issued CPAP devices despite the worldwide shortage and that his family had located "multiple CPAP machines and were willing to purchase one" for him "at their own expense and would allow Corcoran Medical Staff to deal directly with the company …" (*Id*. at 23-24.) Further, taking judicial notice of the Philips recall of CPAP devices impacting 15 million devices due to health risks associated with certain defects does not overcome Plaintiff's allegations such that dismissal should result, nor do the judicially noticed documents establish Defendants were unable to

provide Plaintiff with a CPAP machine through an alternative means or that providing a CPAP machine was beyond their control. This is so because, on a motion to dismiss, there is no evidence before the Court concerning any Defendant's belief.

In short, at this stage of the proceedings, prior to the commencement of discovery, Plaintiff has sufficiently alleged plausible Eighth Amendment deliberate indifference claims against Defendants Crawford, Fincalero, and Russell. *Iqbal*, 556 U.S. at 678; *Hebbe*, 627 F.3d at 342; *Manzarek,* 519 F.3d at 1030-31.

***C. Eighth Amendment Deliberate Indifference Claim Against Vasquez***

First, Plaintiff alleges he provided Defendant Vasquez with the January 2022 letter personally. As noted above, that letter specifically addressed Plaintiff's symptoms and serious medical need for a CPAP machine and offered alternative means by which to obtain one despite a worldwide shortage. Plaintiff also alleged that Vasquez's statement that CPAP machines would not be available until sometime in 2023 was untruthful because he received a CPAP machine in June 2022, just three days after a letter sent by the Prison Law Office on his behalf asking that Plaintiff's need be prioritized; a reasonable inference can be made that priority based on need was not a consideration, particularly where Plaintiff alleged he had been informed that another inmate diagnosed with mild to moderate obstructive sleep apnea had been issued a CPAP machine before Plaintiff in or around April 15, 2022. Further, Plaintiff alleges he never received a response from Vasquez. Those facts are sufficient to demonstrate that Defendant Vasquez knew of Plaintiff's serious medical need and disregarded that need.

As concerns Defendants' argument that the complaint does not "identify when these events with RN Vasquez supposedly occurred" or whether Plaintiff "mentioned the status or symptoms of his sleep apnea" to her, again, both the January and April 2022 letters, alleged to have been sent and/or provided to all medical staff at the prison, reference Plaintiff's ongoing symptoms from a lack of a CPAP machine. Liberally construed and affording Plaintiff the benefit of doubt, the undersigned finds these facts sufficient to establish that Defendant Vasquez was aware of Plaintiff's serious medical need and was deliberately indifferent to that need. That same liberal construction saves from dismissal Plaintiff's claim against Vasquez despite the lack of an

express allegation that Vasquez individually "was responsible for providing [Plaintiff] any medical care" or that she "had the power to provide" him with a CPAP device. Fed. R. Civ. P. 8(a)(2); *Manzarek*, 519 F.3d at 1030-31. Finally, for the same reasons discussed above, the undersigned is not persuaded that Vasquez has established she was unable to provide Plaintiff with a CPAP machine through an alternative means or that providing a CPAP machine was beyond her control. Those facts might be established following completion discovery and may appropriately be raised in a motion for summary judgment, but at present, Plaintiff's allegations are legally sufficient and plausible on their face. *Iqbal*, 556 U.S. at 678; *Hebbe*, 627 F.3d at 342; *Manzarek,* 519 F.3d at 1030-31.

***D. Eighth Amendment Deliberate Indifference Claim Against McDaniel***

Defendants argue that Plaintiff has failed to allege sufficient facts to demonstrate McDaniel had knowledge of and disregarded Plaintiff's serious medical need. More particularly, they claim Plaintiff's complaint does not allege McDaniel encountered Plaintiff, was responsible for providing him care, or had any involvement in procuring a CPAP device. They contend the allegations are limited to the January and April letters and a response to a health care grievance and are insufficient to state a claim.

As summarized above, both letters describe Plaintiff's symptoms given the lack of a CPAP device as well as a lack of response. Thus, the undersigned finds Ms. Gonzales's January 2022 letter and Plaintiff's April 2022 letter expressly addressed and provided notice of Plaintiff's serious medical need. And, as previously found, the fact Plaintiff did not specifically allege McDaniel received the letter does not subject the claim to dismissal. Moreover, Plaintiff alleges that "all" named Defendants received the January 2022 letter, and that he "personally pleaded" with each, recounting details of his symptoms and their impacts. Plaintiff also alleges he has "officially stamped documents" establishing that all named Defendants "knew that there were CPAP machines available" at no cost to the institution.

The undersigned finds Defendants' reliance on *Anderson v. Tate*, No. 2:12-cv-0261 MCE KJN P, 2012 WL 1120677, at *6 (E.D. Cal. Apr. 3, 2012) to be misplaced. There, Anderson had alleged inadequate medical care against Warden Gower and relied upon letters he sent to Gower,

including a letter from Anderson to the "Director of Internal Affairs complaining about race-based lock downs and delay in processing two Health Care Appeals alleging inadequate medical care" and a memorandum to Plaintiff "from HDSP Warden McDonald stating that plaintiff's letter to the Office[] of Internal Affairs" had been forwarded to his office and encouraging Anderson "to use the inmate appeal system." *Anderson*, at *6. In contrast to the oblique references the plaintiff in *Anderson* made in his letters about the alleged unconstitutional conduct at issue, Plaintiff's allegations here are alleged to be more direct and include an allegation that McDaniel responded to Plaintiff's claims by merely stating that California law directs prison health care and that providers' care choices are based on necessity. Further, Plaintiff's Exhibit 2 includes an Institutional Level Response signed on McDaniel's behalf and dated April 5, 2022, wherein it is noted that the moderate obstructive sleep apnea diagnosis in October 2021 was confirmed and a CPAP device was "ordered," notes Plaintiff's complaints of fatigue on February 4, 2022 were "possibly related to sleep apnea," and that Plaintiff was "waiting on a machine" to treat sleep apnea as of February 15, 2022. (Doc. 49 at 11.)

Liberally construed and affording Plaintiff the benefit of every reasonable inference, the undersigned finds Plaintiff sufficiently alleges an Eighth Amendment deliberate indifference claim against Defendant McDaniel. *Iqbal*, 556 U.S. at 678; *Hebbe*, 627 F.3d at 342; *Manzarek,* 519 F.3d at 1030-31.

### *E. Eighth Amendment Deliberate Indifference Claim Against McCoy*

Lastly, Defendants argue Plaintiff's complaint fails to sufficiently allege Defendant McCoy knew of and disregarded Plaintiff's serious medical need. Defendants assert that the complaint does not allege McCoy received the January and April 2022 letters and that informing Plaintiff "of the status of a CPAP device because of a world-wide shortage and being sent letters" does not establish that McCoy knew of and disregarded a substantial risk to Plaintiff. Further, they maintain that Plaintiff's assertions that he was seen by McCoy in September 2021 and that McCoy ordered a CPAP device in October 2021 are insufficient to state a claim. Defendants argue the September 2021 reference "does not describe what happened during the September 2021 encounter" and thus cannot form the basis for McCoy's knowledge of Plaintiff's serious

medical need for a CPAP device. They maintain the amended complaint "incorrectly concludes Respiratory Therapist McCoy 'failed to provide' Coleman the treatment [] McCoy supposedly ordered for Coleman and knew Coleman needed" because it involves a legal conclusion. Defendants further argue there is no allegation that McCoy "had any power" to provide Plaintiff with "a CPAP device despite the recall of 15 million CPAP devices." Other than describing Plaintiff's few interactions with McCoy to discuss "some of his experiences with sleep apnea," Defendants maintain the complaint does not identify any other facts relating to those interactions.

The amended complaint alleges Plaintiff saw Defendant McCoy on September 21, 2021, that McCoy ordered a CPAP device for Plaintiff on October 7, 2021, that on March 30, 2022, McCoy did not respond to an email authored by Psychiatric Technician Torres concerning the status of the CPAP device, and that Plaintiff met with McCoy "a few times" wherein the two talked about sleep apnea diagnoses. While there are no dates associated with other meetings Plaintiff had with McCoy to discuss sleep apnea, Plaintiff alleges thereafter that McCoy failed to provide him "treatment he ordered and knew Plaintiff needed." And Plaintiff's Exhibit C reflects that he was seen by the "respiratory therapist" in late September 2021, that his "Epworth Sleepiness Scale score was eleven" and that he was "issued a WatchPat device for sleep study." (Doc. 49 at 11.) Thus, it is reasonably discernable from Plaintiff's allegations that he saw McCoy in September 2021 about a condition that interrupted his sleep and that McCoy performed some form of preliminary testing and issued a sleep study device. And it is equally reasonable to infer from his allegations that Plaintiff met with McCoy thereafter to discuss his disorder and CPAP devices.

As summarized above, both the January and April 2022 letters describe Plaintiff's symptoms given the lack of a CPAP device as well as a lack of response. Thus, the undersigned finds Ms. Gonzales's January 2022 letter and Plaintiff's April 2022 letter specifically address and provided notice of Plaintiff's serious medical need. And, as previously found, the fact Plaintiff did not specifically allege McCoy received the letter does not subject the claim to dismissal. Moreover, Plaintiff alleges that "all" named Defendants received the January 2022 letter, and that he "personally pleaded" with each, recounting details of his symptoms and their impacts. And

Plaintiff alleges he has "officially stamped documents" establishing that all named Defendants "knew that there were CPAP machines available" at no cost to the institution.

Liberally construed and affording Plaintiff the benefit of doubt, the undersigned finds the aforementioned facts sufficient to establish that Defendant McCoy was aware of Plaintiff's serious medical need and was deliberately indifferent to that need by failing to adequately respond after October 2021. That same liberal construction saves from dismissal Plaintiff's claim against McCoy despite the lack of an express allegation that McCoy "had the power to provide" him with a CPAP device. Finally, for the same reasons discussed above, the undersigned is not persuaded that McCoy has established he was unable to provide Plaintiff with a CPAP machine through an alternative means or that providing a CPAP machine was beyond his control. *Iqbal*, 556 U.S. at 678; *Hebbe*, 627 F.3d at 342; *Manzarek,* 519 F.3d at 1030-31.

***F. Plaintiff's Eighth Amendment Claim Against Zutler***

Defendant Zutler contends that Plaintiff failed to allege Zutler acted with a sufficiently culpable state of mind. (Doc. 52 at 14-15.) Zutler maintains Plaintiff's allegation that Zutler diagnosed him with moderate obstructive sleep apnea is the sole allegation raised in the operative complaint. (*Id.* at 15.) He further argues Plaintiff's factual allegations "sound in mere negligence." (*Id.*)

As concerns Defendant Zutler, Plaintiff's first amended complaint alleges that Zutler diagnosed Plaintiff with moderate obstructive sleep apnea, that Plaintiff was advised by Zutler that an "Apnea-Hypopnea Index" (AHI) score of greater than 30 was severe, a score between 15 and 30 is moderate, and a score between 5 and 15 is mild. Plaintiff experienced "between 15 and 30 breathing pauses per hour while" he slept. Plaintiff alleges Zutler informed him that sleep apnea was a serious condition, that if left untreated could result in "sudden death, heart failure, stroke, diabetes, high blood pressure, obesity, or extreme fatigue," that the treatment for his condition was a CPAP machine, and that Plaintiff had been enrolled in the Chronic Care Program. Plaintiff further alleges that Zutler informed him he had not received a CPAP machine due to a worldwide shortage and that this remained Zutler's position even after he and others were provided a list of companies "that had CPAP machines in stock ready to ship." Further, Plaintiff

alleges Ms. Gonzales's January 2022 letter, addressed, in part, to his "Primary Care Physician, and all Corcoran medical personnel," establishes that Zutler "knew that there were CPAP machines available to treat [his] condition at no cost" but that Zutler chose to allow him to suffer unnecessarily. Plaintiff alleges he has in his "possession a response from the Litigation Coordinator stating he delivered the letter to the defendants," presumably including Zutler. Plaintiff also alleges that in the April 2022 letter, addressed in relevant part to his "Primary Care Physician and all concerned medical personnel, Plaintiff advised the recipients he was in pain, had not received a CPAP machine for six months, was "being ignored by medical staff," and that his family had located an available CPAP machine. Plaintiff further alleges the "24.2 events per hour" interruption to his sleep was "a serious level of disruption the Defendant Dr. [Zutler] warned [him] is potentially life threatening without treatment" and that Plaintiff's score "was on the high moderate side moving towards severe." Plaintiff alleges "[e]ach Defendant had personal knowledge of the severity of [his] condition" and that he "personally pleaded with them" yet each "dismissed [his] cries with claims of a worldwide shortage'" despite "written proof of at least ten companies that had CPAP machines on hand" and Plaintiff and/or his family's offer "to provide the funds to CDCR to cover the cost so a CPAP machine could be purchased immediately." He alleges "each named Defendant chose to do nothing," resulting in his continued suffering.

Liberally construing the amended complaint and affording Plaintiff the benefit of every reasonable inference from the facts alleged, the undersigned finds Plaintiff has sufficiently alleged an Eighth Amendment deliberate indifference claim against Defendant Zutler. Based on the above, Plaintiff plausibly alleged Zutler knew that he faced a substantial risk of serious harm and that despite that knowledge Zutler failed to respond to the January and April 2022 letters describing continuing symptoms relating to Plaintiff's diagnosis, his need for a CPAP machine, and that despite a worldwide shortage, a CPAP machine was available for Plaintiff to purchase and use. *Iqbal*, 556 U.S. at 678; *Wilhelm*, 680 F.3d at 1122; *Hebbe*, 627 F.3d at 342; *Manzarek,* 519 F.3d at 1030-31; *Jett*, 439 F.3d at 1096.

***G. Plaintiff's Punitive Damages Claim Against Zutler***

Defendant Zutler argues Plaintiff has improperly and unlawfully asserted a punitive

damages claim against a health care provider without first complying with California Code of Civil Procedure section 425.13. (Doc. 52 at 15-17.) Zutler asks the Court to dismiss Plaintiff's claim for punitive damages without leave to amend. (*Id*. at 17-20.)

Section 425.13 of the California Code of Civil Procedure provides as follows:

> (a) In any action for damages arising out of the professional negligence of a health care provider, no claim for punitive damages shall be included in a complaint or other pleading unless the court enters an order allowing an amended pleading that includes a claim for punitive damages to be filed. The court may allow the filing of an amended pleading claiming punitive damages on a motion by the party seeking the amended pleading and on the basis of the supporting and opposing affidavits presented that the plaintiff has established that there is a substantial probability that the plaintiff will prevail on the claim pursuant to Section 3294 of the Civil Code. The court shall not grant a motion allowing the filing of an amended pleading that includes a claim for punitive damages if the motion for such an order is not filed within two years after the complaint or initial pleading is filed or not less than nine months before the date the matter is first set for trial, whichever is earlier.
>
> (b) For the purposes of this section, "health care provider" means any person licensed or certified pursuant to Division 2 (commencing with Section 500) of the Business and Professions Code, or licensed pursuant to the Osteopathic Initiative Act, or the Chiropractic Initiative Act, or licensed pursuant to Chapter 2.5 (commencing with Section 1440) of Division 2 of the Health and Safety Code; and any clinic, health dispensary, or health facility, licensed pursuant to Division 2 (commencing with Section 1200) of the Health and Safety Code. "Health care provider" includes the legal representatives of a health care provider.

Cal. Code Civ. P. § 525.13.

Significantly, Plaintiff has not alleged a state law negligence claim. Rather, he has alleged, and this action proceeds on, Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claims. Thus, California Code of Civil Procedure section 425.13 does not apply in this action. *See, e.g.*, *Tolbert v. Michaels*, No. 1:19-cv-00278-NONE-BAM (PC), 2021 WL 3662456, at *4 (E.D. Cal. Aug. 18, 2021) (recommending motion to dismiss be denied and stating: "The Court finds Defendant's argument as to punitive damages irrelevant to this action. … Plaintiff is proceeding solely on a claim for deliberate indifference under the Eighth Amendment. There are no state law claims in this action, and therefore Defendant's argument regarding punitive damages under section 425.13 is entirely inapplicable"), *recommendation*

*adopted*, 2021 WL 4263061 (E.D. Cal. Sept. 20, 2021); *cf. Jorgenson v. United States*, No. 1:17-cv-00817-LJO-EPG (PC), 2019 WL 4640515, at *4-5 (E.D. Cal. Sept. 24, 2024) (holding that § 425.13 is a procedural rule that does not apply in federal court under *Erie R.R. Co. v. Tompkins*, even as to state law tort claims) (citing *Scalia v. County of Kern*, 308 F. Supp. 3d 1064, 1091 (E.D. Cal. 2018)) *recommendation adopted*, 2019 WL 5997353 (E.D. Cal. Nov. 4, 2019).

## VIII. CONCLUSION AND RECOMMENDATIONS

Accordingly, for the reasons stated above, the Court **HEREBY RECOMMENDS** that:

1. Defendants Crawford, Fincalero, McCoy, McDaniel, Russell, and Vasquez's motion to dismiss (Doc. 40) be **DENIED**; and
2. Defendant Zutler's motion to dismiss (Doc. 52) be **DENIED**.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within 14 days after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Objections, if any, shall not exceed 15 pages. Any pages filed beyond the 15-page limit may be stricken and/or disregarded. Exhibits shall not be filed with objections, but they may be referenced by the document and page number. No new exhibits may be filed with objections.

Any failure by a party to file objections within the specified time may result in the party's waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **October 9, 2026**

UNITED STATES MAGISTRATE JUDGE